Robert **GUZZETTA** and **Kathleen S. Guzzetta, Defendants Below, Appellants,**

v.

**SERVICE CORPORATION OF WESTOVER HILLS, Plaintiff Below, Appellee.**

No. 34, 2010.

Supreme Court of Delaware.

Submitted: Sept. 1, 2010.
Decided: Nov. 9, 2010.

---

**53.** N.J. Stat. Ann. § 2A:14–2.

Thomas C. Marconi, Esquire (argued), and Paul E. Bilodeau, Esquire, of Losco & Marconi, P.A., Wilmington, Delaware, for Appellants.

Richard H. Cross, Jr., Esquire, (argued), Amy E. Evans, Esquire, and Ryan M. Ernst, Esquire, of Cross & Simon, LLC, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

BERGER, Justice:

 In this appeal we consider whether the Court of Chancery abused its discretion in setting the amount of an injunction bond. A party that is wrongfully enjoined may recover damages resulting from the injunction, but that recovery is limited to the amount of the bond. Thus, in order to fully protect the enjoined party, the trial court should set the bond at a level likely to meet or exceed a reasonable estimate of potential damages. In this case, the trial court correctly rejected several items that appellants included in their list of potential damages. But the remaining items totaled more than twice the amount of the bond, and the trial court did not explain which of the remaining items were rejected, or why. Accordingly, we reverse.

## Factual and Procedural Background

In 2007 Robert and Kathleen S. Guzzetta purchased 907 Berkeley Road, a residential property located in Westover Hills, Wilmington, Delaware (the Property). At that time, the Guzzettas owned and lived in the adjoining property. They purchased the Property in order to create a grassy play area for their children. The Guzzettas intended to demolish the existing structures and re-landscape the Property. In May 2007, the Service Corporation of Westover Hills filed this action seeking a permanent injunction claiming that the demolition would violate a restrictive covenant in the Guzzettas' deed. The trial court entered a temporary restraining order, and then a preliminary injunction.

Shortly after being enjoined, the Guzzettas filed a motion, pursuant to Court of Chancery Rule 65(c), seeking security in the amount of $10,189.56, based on an itemized list of potential damages. After a telephonic hearing, the court required the Service Corporation to post security in the amount of $5,000. A Master tried the case, and issued a Draft Report on August 5, 2008. The Master concluded that the Service Corporation should not be granted a permanent injunction because the applicable deed restriction did not govern the planned demolition.

In September 2008, the Guzzettas filed a motion to increase the security from $5,000 to at least $79,146.94. The trial court agreed to increase the Service Corporation's bond to $10,000. The Master issued a Final Report in April 2009, and in December 2009, the Court of Chancery: 1) vacated the preliminary injunction; 2) denied the Service Corporation's application for a permanent injunction; 3) ordered the Service Corporation to reimburse the Guzzettas for fees and costs; and 4) awarded the Guzzettas $10,000 in damages. This appeal followed.

## Discussion

 The only issue on appeal is whether the trial court abused its discretion in setting the amount of the injunction bond.[1] Chancery Court Rule 65(c), pro-

---

1. The Service Corporation argues that, because the Guzzettas' Notice of Appeal failed to identify the Orders setting the amount of the injunction bond, their claim is barred under Supreme Court Rule 7(c). The Notice of Appeal stated that the Guzzettas were ap-

pealing the trial court's decision to limit their damage award. The Memorandum Opinion, identified in the Notice of Appeal, reviewed the court's earlier Orders setting the amount of the bond. We are satisfied that the Notice of Appeal gave adequate notice of the issue

vides that a party seeking an injunction must give security "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined. . . ." The security, usually a bond, fixes the maximum amount that an enjoined party may recover.[2] Damages are those proximately caused by the injunction, and must be proven by a preponderance of the evidence.[3] But, damages are not fully ascertainable until the court vacates the injunction. Because actual damages are uncertain, and because a wrongfully enjoined party has no recourse other than the security, the court should "err on the high side" in setting the bond. In *Mead Johnson & Co. v. Abbott Laboratories*, the Seventh Circuit Court of Appeals explained:

> When setting the amount of security, district courts should err on the high side. If the district judge had set the bond at $50 million, as Abbott requested, this would not have *entitled* Abbott to that sum; Abbott still would have to prove its loss, converting the "soft" numbers to hard ones. An error in setting the bond too high thus is not serious. . . . Unfortunately, an error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond.[4]

■ The party seeking an injunction bond must support its application with "facts of record or . . . some realistic as opposed to a yet-unproven legal theory

from which damages could flow to the party enjoined." [5] The Guzzettas, in their motion to increase the bond, attached an itemized list of their potential damages. That list included, among other things, $8,123.63 for additional property and school taxes, $1,564 for insurance, $8,000 for increased demolition costs, $550 for increased landscape costs, and $8,500 for lost use of the Property. Those potential damages total almost $27,000. The other substantial items on the Guzzettas' list were $2,866.50 for a landscape architect, $1,532 for interest on damages, and $46,646.15 for the Guzzettas' time off from work.

■ The trial court decided that the Guzzettas "may be able to prove damages resulting from higher property taxes . . . and higher insurance costs, as well as something for lost use of the property. . . ." [6] The court rejected their claimed damages for landscaping and arborist costs because there was no showing that those costs were proximately caused by the injunction. It rejected the interest on damages claim because there was an insufficient showing of out-of-pocket damages. Finally, the trial court found no legal basis on which to claim damages based on the time spent litigating this matter. Without further reference to the amounts in the Guzzettas' motion, the court increased the bond from $5,000 to $10,000.

We agree with the trial court's reasons for rejecting the categories of potential damages noted above. On appeal, the

---

being appealed. *Cf. Bellanca Corp. v. Bellanca*, 164 A.2d 589 (Del.1960).

2. *Coyne–Delany Co., Inc. v. Capital Development Bd. of Illinois*, 717 F.2d 385, 393 (7th Cir.1983).

3. *Emerald Partners v. Berlin*, 726 A.2d 1215, 1226 (Del.1999).

4. 201 F.3d 883, 888 (7th Cir.2000).

5. *Petty v. Penntech Papers, Inc.*, 1975 WL 7481 at *1 (Del.Ch.).

6. *Service Corporation of Westover Hills v. Guzzetta*, C.A. No. 2922–VCP, Order at 2–3, 2008 WL 7863960 (October 30, 2008).

Guzzettas specifically address only the $46,646.15 in damages for lost time from work. They cite *Emerald Partners v. Berlin* [7] as authority that such damages can be compensated under Rule 65(c). That case is inapposite. In *Emerald Partners,* the enjoined party recovered the value of the senior executives' time spent dealing with the effects of having a merger enjoined. Here, there was nothing that the Guzzettas had to do but wait for the injunction to be lifted. In short, the Guzzettas have presented no legal theory under which their lost earnings would be protected by an injunction bond.

 Even after excising the rejected categories of damages from the calculation, however, the trial court's decision to set the bond at $10,000 remains problematic. We recognize that a decision fixing the amount of a bond is a matter of discretion, but that discretion must be exercised in a manner consistent with the purpose of an injunction bond—to protect a party that is wrongfully enjoined. It should be remembered that the bond does not entitle the enjoined party to *any* damages, and the cost of a bond typically is a very small fraction of its face value.[8] If necessary, the trial court could conduct an evidentiary hearing to satisfy itself that there is some credible basis for the estimated damages. Having done so, a proper exercise of discretion would then require that the court explain its rationale for setting a bond at an amount well below the enjoined party's credible estimate of potential damages. The trial court did not provide such an explanation, and it does not appear from the record that the Guzzettas' remaining estimated damages are unreasonable.

### Conclusion

Based on the foregoing, the Court of Chancery's award of $10,000 in damages is reversed, and this matter is remanded for further action in accordance with this decision. Jurisdiction is not retained.

---

7. 1998 WL 474195 (Del.Ch.).

8. *Mead Johnson & Co. v. Abbott Laboratories,* 201 F.3d at 888.