**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: August 27, 2015
Date Decided: August 28, 2015

Michael P. Kelly, Esquire
Andrew S. Dupre, Esquire
Brian R. Lemon, Equire
Benjamin A. Smyth, Esquire
McCarter & English LLP
Renaissance Center
405 N. King Street, 8th Floor
Wilmington, DE 19801

Robert A. Penza, Esquire
Christopher M. Coggins, Esquire
Polsinelli PC
222 Delaware Avenue
Suite 1101
Wilmington, DE 19801

Re: *Brace Industrial Contracting, Inc. et al. v. Peterson Enterprises, Inc. et al.*
Civil Action No. 11189-VCG

Dear Counsel:

The matter before me involves enforcement of a covenant not to compete located in a stock purchase agreement. Following a hearing on the Plaintiffs' Motion for Preliminary Injunctive Relief (the "Hearing"), I made a partial ruling from the bench. This letter opinion resolves the remaining issues with respect to the Plaintiffs' Motion. As counsel are aware, in order to demonstrate entitlement to a preliminary injunction, the moving party must show a reasonable probability of success on the merits, that irreparable harm will result absent the injunction, and

that such harm outweighs the harm to the non-moving party should the preliminary injunction prove improvidently granted.[1]

For the reasons explained from the bench at the Hearing on August 20, 2015, I found for the Plaintiffs here on the first two factors.[2] Because I allowed an amendment to the Complaint involving injunctive relief shortly before the Hearing, and because I found that equity so required, I permitted the Defendants to supplement the record with an affidavit concerning the balance of the equities. That supplemental affidavit was submitted yesterday; what follows is my decision in light of that affidavit and the record developed in connection with the Hearing.

To briefly recap,[3] the parties entered a Stock Purchase Agreement (the "SPA") which provided that the Seller—a Defendant here—would not compete with the Buyer—a Plaintiff here—for a period of five years in the United States and Canada in "the Business." "The Business" is a defined term under the SPA meaning "the turnkey, integrated business of selling and renting industrial and commercial scaffolding and the provision of related design, engineering, erection, dismantling, and jobsite management and maintenance services."[4] The Plaintiffs clarified at the Hearing that only the rental and sale of the "PERI UP" brand of

---

[1] *See, e.g., Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1278-79 (Del. 1989).
[2] Prelim. Inj. Hr'g Tr. 81:1–7.
[3] This Letter Opinion will supplement, not displace, my bench ruling at the Hearing.
[4] Pls.' Opening Br. in Supp. of Mot. for a Prelim. Inj. Exhibit B (the SPA), at Exhibit A.

"industrial and commercial scaffolding" was the subject of the preliminary injunction request.[5]

The Defendants concede that they are contractually prohibited from competing in "the Business" in the "Territory," the United States and Canada, under the SPA, but contend that a carve-out allows them to sell and rent scaffolding through the entity Vernon L. Goedecke Company, Inc. ("Goedecke"). The carve-out provides, in relevant part:

> Vernon L. Goedecke Company, Inc. and its Affiliates may continue to design, engineer, sell and rent scaffolding equipment and other products to participants in the Business in the Territory, provided that Vernon L. Goedecke Company, Inc. and such Affiliates are not allowed to perform the Business in the Territory.[6]

In other words, the carve-out is limited to transactions between Goedecke and those "participa[ting] in" the Business, so long as those transactions do not amount to "perform[ance] of the Business." Neither "participants in" nor "perform the Business" are defined terms in the SPA. I found that, although the language is ambiguous, there is a reasonable likelihood that the Plaintiffs will prevail on their construction of the contact, which is that the carve-out permits only rental and sale of scaffolding by Goedecke to those themselves in the business of providing

---

[5] Prelim. Inj. Hr'g Tr. 29:12–23. At oral argument, counsel for the Plaintiffs suggested that only PERI UP scaffolding was the subject of the injunction sought, but asked to confirm that with his client; since, despite subsequent correspondence to the Court from counsel, he has not withdrawn the suggestion, I limit my consideration to preliminarily enjoining sales and rentals of PERI UP industrial and commercial scaffolding.

[6] Pls.' Opening Br. in Supp. of Mot. for a Prelim. Inj. Exhibit B (the SPA) at § 5.2(a), (d); *see also id.* §5.2(h).

scaffolding—that is, business-to-business sales and rentals—and does not carve out from the prohibition retail sales or rentals to an end user. Goedecke is currently engaged in such retail rentals and sales. Thus, the Plaintiff has satisfied the first prong of the analysis. In addition, both because the parties provided in the SPA that breach of the non-compete would entail irreparable harm and because the probable effect of competition on the goodwill purchased by the Plaintiffs made irreparable harm likely here, I found that the second prong of the preliminary injunctive relief analysis was satisfied.

In addition to unsuccessfully contesting the Plaintiffs' demonstration of likelihood of success on the merits and irreparable harm, the Defendant opposed the injunction on the ground that it would harm its business in a substantial way, precluding a successful balance of the equities, and in the alternative sought a bond in the amount of $1 million, which it contends is its yearly revenue in connection with its business of "renting and selling all scaffolding."[7] But it is clear that the injunction actually sought—as clarified at the hearing[8]—will have a much smaller impact. Plaintiffs seek to enjoin only the sale and rental of PERI UP brand commercial scaffolding in the United States and Canada; the Defendants'

---

[7] Defs.' Answering Br. in Opp'n to Pls.' Mot. for Prelim. Inj. Exhibit C (Aff. of Eric Peterson) ¶ 12.

[8] *See supra* note 5.

4

worldwide business involves many types of scaffolding not to be covered by the preliminary injunction.

In a supplemental submission, the Defendants have placed an affidavit in the record contending that Goedecke's (presumably worldwide) sale and rental of PERI UP scaffolding produces revenue averaging approximately $277,000 per year, virtually all to end users and subject to the requested injunction. In addition, the Defendants suggest that other revenue would be lost if these customers could not purchase or rent PERI UP scaffolding from Goedecke, and that Goedecke would lose significant but unquantifiable customer goodwill if the injunction sought is granted.

I find that the balance of the equities in light of these facts—that Goedecke's revenue from worldwide PERI UP sales and rentals is only a quarter of its total scaffolding-business revenue, represented to be $1 million yearly, and that this injunction will apply only in the Territory, and not worldwide—supports the preliminary injunctive relief sought when weighed against the irreparable harm alleged by the Plaintiffs and specified contractually. The Plaintiffs' request to enjoin the Defendants from the sale and rental of PERI UP commercial and industrial scaffolding to end users in the Territory, pending trial, is granted.

I must next provide for surety from which the Defendants may be compensated if the grant of preliminary relief proves improvident.[9] The burden to demonstrate the proper amount of such surety rests with the Defendants.[10] Initially, the defendants sought a $1 million bond, in light of their revenue involving scaffolding. The injunction granted will apply only to sales and rentals involving PERI UP, however, which averages approximately $277,000 annually. In addition, the Defendants point to potential loss of other non-prohibited sales, and goodwill. But the Defendants fail to limit calculation of potential lost revenues to those from the Territory—the United States and Canada—and I note that the Plaintiffs have alleged, and the Defendants have not denied, that the Defendants do business worldwide. In light of all those factors, and the fact that the limited nature of the issues here indicates that a prompt resolution of the contractual issues necessary to permanent injunctive relief is likely, I find $250,000 sufficient surety.

As to the form of surety, such surety is "usually [provided via] a bond."[11] I note, however, that here the Defendants admittedly hold property belonging to the Plaintiffs—funds in the form of payments mistakenly made to the Defendants by

---

[9] Ct. Ch. R.65(c).
[10] *E.g. Guzzetta v. Serv. Corp. of Westover Hills*, 7 A.3d 467, 470 (Del. 2010) (The party seeking an injunction bond must support its application with "facts of record or . . . some realistic as opposed to a yet-unproven legal theory from which damages could flow to the party enjoined." (quoting *Petty v. Penntech Papers, Inc.,* 1975 WL 7481 at *1 (Del. Ch. Sept. 24, 1975))).
[11] *Id.*

customers of the Plaintiffs—in the amount of millions of dollars. The Defendants concede that they are holding this property as a kind of improper self-help, as leverage in this litigation and as a premature set-off against (much smaller) claims they have against the Plaintiffs. The Plaintiffs sought a mandatory preliminary injunction directing that the Defendants return this money to them, which I denied on grounds of lack of irreparable harm. However, in this context, it would be inequitable to require the Plaintiffs to post security, via a secured bond or otherwise, in the amount I have ordered *in addition to* the amount of their funds already held by the Defendants.

Therefore, the Plaintiffs may file an unsecured bond in a form satisfactory to the Register in Chancery, binding them to payment for benefit of the Defendants in the amount of $250,000, conditioned upon Order of the Court, after which bond is filed the Preliminary Injunction will take effect. If Defendants wish this bond to be secured by funds held by the Court, they may pay in to the Register in Chancery $250,000 of the funds which they currently hold for the benefit of the Plaintiffs, which will constitute security for the bond against which they may recover should the injunction prove wrongful.

For the foregoing reasons, the Plaintiffs' request for preliminary injunctive relief is granted. The Plaintiffs should submit an appropriate form of Order.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III