**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: August 10, 2018
Date Decided: August 14, 2018

Jason C. Jowers, Esquire
Meghan A. Adams, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

Kathleen M. Miller, Esquire
Clarissa R. Chenoweth, Esquire
Smith, Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

> RE: ***Applied Energetics, Inc. v. George Farley and AnneMarieCo., LLC***
> Civil Action No. 2018-0489-TMR

Dear Counsel:

This letter opinion addresses the amount of the bond Plaintiff must post in connection with the Stipulation and Status Quo Order entered on July 20, 2018.

Court of Chancery Rule 65(c) provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the Court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." "The security, usually a bond, fixes the maximum amount that an enjoined party may recover. . . . Because actual damages are uncertain, and because a wrongfully enjoined party has no recourse other than the security, the court

should 'err on the high side' in setting the bond." *Guzzetta v. Serv. Corp. of Westover Hills*, 7 A.3d 467, 470 (Del. 2010). The party seeking the bond, however, must support its application with "facts of record or . . . some realistic as opposed to a yet-unproven legal theory from which damages could flow to the party enjoined." *Id.* (quoting *Petty v. Penntech Papers, Inc.*, 1975 WL 7481, at *1 (Del. Ch. Sept. 24, 1975)). "[T]he amount of a bond is a matter of discretion," but there must be a "credible basis for the estimated damages." *Id.* at 471.

Defendants George Farley ("Farley") and AnneMarieCo., LLC ("AMC") argue that they will suffer damages if the price of Applied Energetics stock drops between the date they could have sold the 25,000,000 shares at issue in this litigation[1] and the date they actually sell those shares. Stated differently, Defendants will incur damages if they could have and would have sold the shares at a higher price but for the injunction. Defendants seek a bond representing 50% of the value of the 25,000,000 shares on July 5, 2018, or $1,750,000. This amount is equivalent to a per-share price of $0.07. Defendants use this $0.07 price because it is near the stock's August 6 intraday low price of $0.058.

---

[1] Defendants estimate damages using the share price on July 5, 2018, the date of the injunction. The earliest date Farley could have sold his 5,000,000 shares, however, is July 6, 2018, when trading restrictions on the 5,000,000 shares allegedly would be lifted. For both dates, the share price is $0.14.

Defendants provide no convincing explanation for why 50% of the total value of their 25,000,000 shares on July 5, 2018, provides a credible basis for their estimated damages. Defendants merely assume that they will incur losses at a rate of $0.07 per share. But since the date of the injunction, Applied Energetics stock has traded at an average price of $0.11-0.12.[2] On only one day, August 6, was the price of the stock less than $0.07. On that date, Applied Energetics, Inc. issued a press release announcing the recent death of its President and Acting Chief Executive Officer. The lowest price of Applied Energetics stock that day was $0.058, but the stock closed at $0.09. Additionally, Defendants' estimated damages ignore trading restrictions that seemingly apply to a large majority of their shares, as explained more fully below.[3] Defendants, therefore, do not provide a credible basis for estimated damages of $1,750,000.

Plaintiff argues that the Court should award a nominal bond because Defendants face little risk of damages due to the strength of Plaintiff's claims. Plaintiff adds that even if the Court awards more than nominal damages, Defendants'

---

[2]     This range is based on the averages for each of the open, high, low, and closing prices of Applied Energetics stock for the period July 5, 2018, through August 10, 2018. *See* Defs.' Aug. 10, 2018 Letter, Ex. A.

[3]     *See* Adams Decl. in Supp. of Mot. for TRO, Ex. 20, at 4.

alleged damages are speculative and exaggerated. Plaintiff asserts that Defendants could not legally or practically sell all of their 25,000,000 shares before the preliminary injunction hearing.

In particular, Plaintiff argues that SEC Rule 144 limits the number of shares Defendants can sell to one percent of Applied Energetics' issued and outstanding shares every quarter. Applied Energetics has 191,194,896 shares issued and outstanding. One percent of the outstanding shares is 1,911,949 shares. Plaintiff argues that even if the price dropped to $0, Defendants' maximum damages would be $162,515.67 (1,911,949 shares multiplied by $0.085, the market price of the stock on August 10, 2018).

Plaintiff's method of estimating damages also has problems. Plaintiff applies the trading restrictions of SEC Rule 144 to the shares of both Farley and AMC. AMC acknowledges that the trading restrictions of SEC Rule 144 apply to its 20,000,000 shares.[4] Farley, however, alleges that these trading restrictions would no longer apply to his 5,000,000 shares on and after July 6, 2018.

The appropriate measure of damages for both sets of shares is the difference between (1) the price of Applied Energetics stock on the date Defendants could have

---

[4]     Adams Decl. in Supp. of Mot. for TRO, Ex. 20, at 4.

and would have sold their shares at a higher price but for the injunction, which Defendants assert is $0.14,[5] and (2) the as-yet-unknown price of Applied Energetics stock on the date Defendants sell the shares, if that price is less than $0.14. To estimate this unknown price, I analyze the historical prices of Applied Energetics stock since the date the injunction was issued. To "err on the high side," I calculate the average of the daily intraday low prices of the stock from July 5, 2018, through August 10, 2018. This calculation yields an average intraday low price of $0.111 per share.[6] The per-share damages estimate is the difference between $0.14 and $0.111, or $0.029.

Because trading restrictions apply to AMC's 20,000,000 shares, AMC cannot sell more than 1,911,949 shares per quarter. Therefore, estimated damages can be applied to only 1,911,949 of AMC's 20,000,000 shares. AMC's estimated damages are $55,446.52, or 1,911,949 multiplied by $0.029.

---

[5]     Based on Defendants' submitted papers, I assume that AMC would have sold its shares on July 5, 2018, when the injunction was issued, and that Farley would have sold his shares on July 6, 2018, when trading restrictions on his shares were lifted. The share price is $0.14 on both dates. I do not address the practical effect a sale of 1,911,949 shares on July 5, 2018, could have on the stock price or the sale of 5,000,000 shares on July 6, 2018.

[6]     Calculated using data provided in Defs.' Aug. 10, 2018 Letter, Ex. A.

The trading restrictions of SEC Rule 144 likely would not apply to Farley's 5,000,000 shares. I therefore apply the same per-share damages estimate of $0.029 to all 5,000,000 shares. This calculation yields $145,000. I therefore set a bond of $200,446.52—$55,446.52 for AMC and $145,000 for Farley.

For the foregoing reasons, Plaintiff shall post a bond in the amount of $200,446.52 within five days after entry of this Order. The August 16, 2018 hearing is cancelled.

**IT IS SO ORDERED**.

Sincerely,

*/s/Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp