**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 5, 2024

David L. Finger, Esquire
Finger & Slanina, LLC
One Commerce Center
1201 North Orange Street
Wilmington, Delaware 19801

Matthew D. Perri, Esquire
Daniel E. Kaprow, Esquire
Elizabeth J. Freud, Esquire
Alfred P. Dillione, Esquire
Rae Ra, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

RE:  *Aaron Leon, et al. v. Patrick Orlando*,
C.A. No. 2024-0311-LWW

Dear Counsel:

I write regarding a security to correspond with aspects of the operative status quo order. A bond is necessary because the defendants are restricted from transferring certain shares and may suffer losses. This decision details the value, timing, and securitization of the bond. The defendants will be free to trade or sell their shares if the bond described below is not timely posted.

## I.    BACKGROUND

This action under 6 *Del. C.* § 18-110 concerns the rightful manager of nominal defendant ARC Global Investments II LLC.[1] ARC was formed as the sponsor of special purpose acquisition company Digital World Acquisition Corp.

---

[1] Verified Compl. Pursuant to 6 *Del. C.* § 18-110 (Dkt. 1) ("Compl.").

("DWAC"), which completed a business combination with Trump Media & Technology Group Corp. ("TMTG").[2]  Defendant Patrick Orlando purportedly is or was the managing member and/or manager of ARC.[3]  The plaintiffs are members of ARC who insist that they removed Orlando from these roles through a March 22, 2024 written consent.[4]

On April 11, 2024, I entered a Status Quo Order resolving cross-motions filed by the parties.[5]  A key dispute in the motions concerned whether the defendants should be restricted from transferring TMTG securities ARC would receive in connection with its ownership of DWAC securities.  The Status Quo Order stated that:

> Neither ARC nor Orlando shall transfer, attempt to transfer, or direct any other person or entity to transfer any [TMTG] securities issued to ARC (including shares, warrants, and units), which are currently in book entry form with Odyssey Transfer and Trust Company (the "ARC Securities"), to any entity or person; provided that ARC and/or Orlando may transfer ARC Securities only insofar as such transfer is necessary to comply with existing contractual obligations and/or operate ARC's business in the ordinary course, after providing Plaintiffs with two business days advance notice of the transfer along

---

[2] *Id.* ¶¶ 2, 26.

[3] *See id.* ¶ 4.

[4] Compl. Ex. 4.

[5] Status Quo Order (Dkt. 24).

with an explanation of the corresponding obligation. Plaintiffs may seek relief as to the specific transfer as appropriate.[6]

This restriction was narrower than that proposed by the plaintiffs.[7]

The parties did not address the need for a bond in their cross-motions for a status quo order. But on April 8, the defendants observed that preventing ARC from transferring its TMTG shares could lead to financial loss.[8] I requested submissions on the propriety of a bond.[9] I also filed a letter posing questions about the amount of shares that could be transferred in the ordinary course under the Status Quo Order and the bond value needed to cover potential losses.[10]

The case has taken procedural side roads since then and, for a time, ordering a bond seemed needless when a settlement was purportedly reached.[11] The hearing at which my questions on the bond were to be addressed was canceled at the parties' request.[12] But the plaintiffs went on to dismiss their original counsel and eschew any settlement.[13] They insisted on pressing forward with their claims and

---

[6] *Id.* ¶ 3.

[7] *See* Pls.' Reply in Further Supp. of their Mot. for Status Quo Order and Opp'n to Defs.' Cross-mot. (Dkt. 14) ¶¶ 6-7; *id.* Ex. 2 ¶ 3.

[8] Dkt. 23.

[9] Dkt. 25.

[10] Dkt. 47.

[11] *See* Dkt. 50.

[12] Dkt. 49.

[13] *See* Dkts. 52, 53.

argued that the Status Quo Order should remain in place pending the resolution of this control dispute. The bond issue became live once again.

On May 21, I filed a letter requesting the information I had previously sought about the scope and amount of a bond.[14] A status conference to discuss the matter was held on May 23. The plaintiffs were represented by new counsel who argued that a bond was unnecessary. The defendants' counsel provided a rough estimate of the shares that could be transferred under the terms of the Status Quo Order, among other matters. I took the issue under advisement, subject to the parties meeting and conferring on the number of shares that could be transferred in the ordinary course.

On May 24, the plaintiffs filed a "Notice of Plaintiffs' Objection to Proposed Transfer of Shares."[15] Broadly speaking, the plaintiffs asked that they be given written notice of and allowed to review transfers that the defendants purport to make in the ordinary course. The next day, the defendants expressed concern about allowing the plaintiffs to delay necessary transactions.[16] At this point, I considered the matter submitted for decision.

---

[14] Dkt. 66.

[15] Dkt. 90.

[16] Dkt. 91.

## II.    ANALYSIS

Under Court of Chancery Rule 65(c), no injunctive relief "shall issue except upon the giving of security by the applicant, in such sum as the Court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."[17]  The value of a bond acts as a cap on the damages recoverable by a wrongfully enjoined party.  The party "has no recourse other than the security," and "[a] party that is wrongfully enjoined may recover damages resulting from the injunction, but that recovery is limited to the amount of the bond."[18]

The defendants must support their request for a security with "facts of record or . . . some realistic as opposed to a yet-unproven legal theory from which damages could flow to [them]."[19]  They have done so.  ARC stands to receive more than 2.14 million TMTG shares, excluding those issued in connection with DWAC founder shares that are the subject of a separate litigation and are subject to a lockup until September.[20]  The Status Quo Order restricts the transfer of some of these shares.  If the TMTG stock price declines while the Status Quo Order

---

[17] Ct. Ch. R. 65(c).

[18] *Guzzetta v. Serv. Corp. of Westover Hills*, 7 A.3d 467, 469-70 (Del. 2010).

[19] *Id.* (quoting *Petty v. Penntech Papers, Inc.*, 1975 WL 7481, at *1 (Del. Ch. Sept. 24, 1975)).

[20] *See* Dkt. 31 Ex. B; *see also* Orlando Aff. (Dkt. 31) ¶ 2.

remains in effect, ARC may suffer losses. ARC's recovery—should the Status Quo Order have been improvidently entered—will be limited to the value of any bond. A bond is therefore warranted.

At present, ARC has yet to receive registered, transferable shares.[21] This delay in registration may be related to the permanent suspension of TMTG's auditor after the registration statement was filed with the Securities and Exchange Commission.[22] It is unknown when the shares will be registered, but ARC fairly contends that it risks losses if the Status Quo Order prevents it from selling or transferring its shares once registration occurs.[23] To protect ARC, the plaintiffs must enter a bond within one business day of the earlier of: (1) the registration statement being approved by the SEC, or (2) TMTG's new audited financials being accepted by the SEC.[24]

The bond should correspond to 1,541,440 TMTG shares held in ARC's name.[25] These shares were received in connection with private placement

---

[21] *See* Defs.' May 17 Letter Regarding Pls.' Position on the Status Quo Order (Dkt. 65) 3.

[22] *Id.*

[23] *Id.* at 3-4.

[24] The latter date reflects a rational assumption that the registration statement may be approved soon after the audited financials are accepted.

[25] As I noted during the May 23 hearing, I am willing to consider an additional bond that covers the TMTG shares associated with ARC's founder shares if this case remains unresolved when the lockup expires.

warrants, are not subject to a lockup, and would be freely transferable absent the Status Quo Order. The total excludes certain shares that ARC's counsel represents will be sold for ordinary course expenses, including to satisfy matured notes. To address the plaintiffs' transparency concerns, the defendants must give the plaintiffs two business days' notice of the amount and obligation at issue for ordinary course sales or transfers.

The amount of the bond is trickier. "[T]he court should 'err on the high side' in setting the bond."[26] At the same time, TMTG's stock price is volatile. It is difficult to say whether the bond should be based on the date the case was filed, the Status Quo Order was entered, or of this decision. Worse, it is impossible to estimate ARC's potential losses based on TMTG's stock price in several months' time when this case is resolved. The fairest measure of the bond is to base it on TMTG's closing stock price the trading day before the bond becomes

---

[26] *Guzzetta*, 7 A.3d at 470.

due (i.e., the trading day before the approval of either ARC's registration statement or its audited financials, whichever comes first).  For example, if the stock price closes at $30 per share the day before the bond is triggered, the plaintiffs would be obligated to post a bond of $46,243,200 within one business day of the triggering event.  The plaintiffs should immediately begin preparing to post the bond and carefully monitor the stock price.

Given the likely size of the bond and that the plaintiffs are individuals, I am mindful that the bond may create an obstacle to pursuing this case.[27]  In the exercise of my discretion, I conclude that the plaintiffs must post security representing 10% of the bond amount.  To use the above hypothetical, security of $4,624,320 would be required.

## III.  CONCLUSION

The plaintiffs must post a partially secured bond, as outlined above, based on the closing price of TMTG stock the trading day before ARC's registration statement or its audited financials are approved, whichever comes first.  The bond is due within one business day of the earlier of those events.  If the plaintiffs fail to

---

[27] *Cf. Gimbel v. Signal Cos., Inc.*, 316 A.2d 619 (Del. 1974) (dissolving an injunction where the plaintiff could not post a security).

timely post the requisite bond, paragraph 3 of the Status Quo Order will be

ineffective in accordance with Rule 65(c) until they do so.

IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor