**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

November 14, 2024

Susan W. Waesco, Esquire
Thomas P. Will, Esquire
Courtney Kurz, Esquire
Taylor A. Christensen, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
Wilmington, Delaware 19801

Matthew F. Davis, Esquire
David A. Seal, Esquire
Callan R. Jackson, Esquire
Adriane M. Kappauf, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, Delaware 19801

RE:     *Comcast Cable Communications Management, LLC v. CX360, Inc.*,
C.A. No. 2024-0991-LWW

Dear Counsel:

I write regarding your submissions on the bond that Comcast Cable Communications Management, LLC must post in connection with the status quo order I previously entered.

On October 22, I issued a Letter Order outlining that the bond would be equivalent to the difference between (1) what Comcast would pay CX360, Inc. under the parties' Master Services Agreement (the "MSA") through its February 28, 2025 termination date (the "MSA Amount"), and (2) what Comcast would pay under the proposed Novation Agreement during the same period (the "Novation Agreement

Amount").[1]   I explained that the bond should also account for $1,400,000 of employee retention costs that CX360 anticipates incurring to perform under the MSA while the status quo order is in place.[2]

Based on this formulation, CX360 submits that Comcast should post a $4,482,000 bond.[3]   It calculates that Comcast would owe $9,246,000 under the Novation Agreement for November 2024 through February 2025, inclusive of Comcast's quarterly prepayments for certain "Non-Managed IVR" services.[4]   It then subtracts $6,164,000 it estimates Comcast would owe under the MSA from November 2024 through February 2025, based on an estimated $1,541,000 monthly payment.[5]   Finally, CX360 adds back the $1,400,000 in employee retention costs.[6]

Using the same formula, Comcast concludes that the bond should total $2,927,120.[7]   Comcast's figure includes the $1,400,000 in employee retention costs.

---

[1] Dkt. 48 at 2 ("Letter Order").

[2] *Id.*

[3] Letter from David A. Seal, Esq., Regarding Bond (Dkt. 53) ("CX360 Bond Letter") 4.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 5.

[7] Letter from Susan W. Waesco (Dkt. 52) ("Comcast Bond Letter") 1.

But its calculation of the amounts owed under the Novation Agreement and the MSA diverge from CX360's assessment.

With regard to the proposed Novation Agreement, Comcast estimates its monthly payment—$2,000,280—and multiplies this number by four.[8] This amount includes the Novation Agreement's $1,541,000 fixed monthly rate, plus estimated professional service hours (charged separately under the Novation Agreement) and additional expenses (such as SMS and outbound calling).[9] In its calculations, Comcast considered its actual and projected use of these services and the applicable rates under the Novation Agreement.[10] It did not consider the quarterly prepayment structure outlined in the Novation Agreement.

For the MSA, Comcast's estimated $6,474,000 payment is $310,000 higher than CX360's estimate. To arrive at this figure, Comcast calculates a monthly payment with three components: (1) its use of "Fully-Managed IVR" services charged at MSA's $150 hourly rate; (2) the amount owed for additional expenses such as SMS and outbound calling; and (3) a monthly "true-up" for the two remaining months in 2024 based on the annual true-up anticipated under the current

---

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.* at 3 nn.5 & 6.

agreement.[11]  Based on this calculation, it computes a $1,681,000 monthly payment for November and December 2024 and a $1,556,000 monthly payment for January and February 2025.[12]  Since CX360 does not explain how it arrived at the $1,541,000 monthly payment it estimates Comcast will owe under MSA, I cannot analyze the differences between the parties' numbers.

After considering the parties' submissions, I believe the appropriate Novation Agreement Amount is $10,259,944.  Per the terms of the Novation Agreement, I am inclined to incorporate the prepayment structure for the Fully-Managed IVR services into my estimate.  Comcast will be required to pay for these services for six months, at the fixed monthly rate of $1,541,000 per month, for a total payment of $9,246,000.  I also find compelling CX360's point that the Novation Agreement excludes certain services it anticipates using, including professional services and other expenses.  Since these payments are not subject to the prepayment structure, Comcast need only pay these amounts for the four month period from November 2024 through February 2025.  In total, these estimated payments add an additional $506,972.

---

[11] *Id.* at 2.

[12] *Id.*  The difference in monthly payments comes from the true-up amount and a higher monthly payment for Fully-Managed IVR services in 2024 projected by Comcast.  *Id.* at 2 n.1.

Again, because CX360's estimate lacks specificity, it is challenging to understand how its calculations differ from Comcast's. Comcast's detailed calculation appears reasonable. Accordingly, I adopt $6,474,000 as the MSA Amount.

Based on these values, and inclusive of the $1,400,000 in employee retention costs, Comcast must post a bond of $5,185,944.[13] As I acknowledged in the Letter Order, "[t]he value of a bond acts as a cap on the damages recoverable by a wrongfully enjoined party."[14] Thus, "the court should 'err on the high side' in setting the bond."[15] The bond to be posted serves these ends. It will adequately compensate CX360 for any harm suffered if the status quo order proves improvidently granted.

For completeness, I have also considered CX360's argument that the formulation of the bond outlined in the Letter Order is flawed and fails to protect it from potential losses.[16] CX360 did not move for reconsideration of the Letter Order. Its request that I do so in response to its letter submission is procedurally improper.

---

[13] $10,259,944 - $6,474,000 + $1,400,000 = $5,185,944.

[14] *Leon v. Orlando*, 2024 WL 2862452, at *2 (Del. Ch. June 5, 2024).

[15] Letter Order 2 (citing *Guzzetta v. Serv. Corp. of Westover Hills*, 7 A.3d 467, 470 (Del. 2010)).

[16] CX360 Bond Letter 1-2.

Regardless, I reject the argument. CX360's position hinges on Schedule A of the proposed Novation Agreement, which would require Comcast to accept—or at least pay for—CX360's services through the end of 2025.[17] According to CX360, by assuming in my bond formulation that it will cease providing services to Comcast in February 2025, I assume Comcast will not sign the Novation Agreement in its current form.[18]

Though CX360's position has some logic, it is inconsistent with the core issues before me. This lawsuit concerns whether CX360 had the right to terminate the MSA after Comcast chose another service provider. If CX360 prevails on its arguments under the MSA, Comcast might choose to sign the Novation Agreement. Or it might not. As such, I decline to order Comcast to post a bond presuming the former scenario will occur. IT IS SO ORDERED.

Sincerely yours,

/s/ *Lori W. Will*

Lori W. Will
Vice Chancellor

---

[17] *See* Verified Compl. for Specific Performance Ex. D (Dkt. 1) Sched. A.

[18] CX360 Bond Letter 3.